**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| **BRISTOL-SPARTANBURG LLC,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. AW-05-1293** |
| **EDEN-SKY LLC and GERALD B. HINDY,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiff Bristol-Spartanburg, LLC ("Bristol" or "Plaintiff"), a Maryland limited liability company, brings this diversity action against Eden-Sky, LLC "("Eden-Sky"), a Pennsylvania limited liability company, and Gerald B. Hindy ("Hindy") (collectively, "Defendants") alleging claims of fraud, tortious interference with contractual and business relations, and a declaration of constructive trust. Currently before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Transfer of Venue [7]. The Court has reviewed the aforementioned motions, and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2004). For the following reasons, Defendants' Motion to Dismiss is denied, and Defendants' Motion for Transfer of Venue is granted.

### BRIEF FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. For approximately four years, from the Spring of 2000 to the fall of 2004, Bristol had an ongoing business relationship with Sky Bank, a financial institution headquartered in Pittsburgh, Pennsylvania and its predecessor Three Rivers Bank (Sky Bank and its predecessor are hereafter referred to as "Sky Bank."). In November of 2000,

Bristol purchased a Spartanburg, South Carolina assisted living facility from a Sky Bank affiliate with financing for the purchase and operating funds provided by Sky Bank.

In the late summer of 2002, it became clear to Bristol that the working capital available for the property would be insufficient to bring the property to stabilization, and Bristol entered into negotiations with Sky Bank to modify the existing agreement. In December 2002, Bristol and Sky Bank entered into an agreement to modify the loan agreement provided Bristol would invest an additional $150,000.00 in new capital. During the summer and fall of 2003, Bristol and Sky Bank officials had numerous discussions about the investments and even had a visit at the South Carolina Facility in the fall of 2003. The South Carolina Facility continued to have problems with cash flow and on-going discussions occurred between Bristol and Sky Bank concerning the Facility.

In October 2004, Sky Bank advised Bristol that Gerald Hindy had been hired to assist with negotiating a resolution of the loan between the parties. Bristol arranged for Hindy to visit the South Carolina Facility and meet with the on-site property manager. After visiting the property, Hindy and representatives of Sky Bank had a conference call in which Sky Bank reconfirmed that Hindy was representing Sky Bank's interests in this matter.

Unknown to Bristol, Hindy's relationship with Sky Bank changed sometime in December 2004, and Hindy in fact began negotiating with the Bank for the acquisition of the loan for his own account. In October and November 2004, Bristol had at least four substantive conversations with Hindy about the loan and the facility. During each of these conversations, Hindy indicated that he believed the Facility was more valuable than reflected in Bristol's earlier proposal to Sky Bank. Hindy requested, and Bristol agreed, that Bristol would make a new proposal to Sky Bank reflecting the improved conditions at the Facility.

On November 15, 2004, Bristol provided Hindy with a written proposal that contained three alternative solutions to the loan. Hindy indicated that he would discuss the matter with Sky Bank and get back to Bristol with a substantive response. Hindy learned that Sky Bank was willing to entertain a discounted payoff of the loan. Hindy decided, however, that he wanted to acquire the loan for his own account and advised Sky Bank that he would like to do so. Hindy thereafter concocted a scheme to defraud Bristol into believing that he was still acting on behalf of Sky Bank and that Sky Bank was unwilling to accept a discounted payoff.

Among the misrepresentations made to Sky Bank were the following: Hindy represented to Sky Bank that Bristol's offer was its best and final offer when he knew that this was false; Hindy represented to Sky Bank that Bristol's offer was contingent on financing, when he knew this was false; and Hindy represented that Bristol would only be able to pay off the loan at a discount if it obtained HUD financing, when he knew this was false.

On March 24, 2005, Hindy, through his wholly owned entity, Eden-Sky, purported to acquire legal title to the loan agreements between Sky Bank and Bristol for $3.6 million, a substantial discount from the balance of the loans. On that same day, Hindy called Bristol and informed Bristol that he had closed on an acquisition of all of Sky Bank's rights in the loan. On April 7, 2005, Hindy sent Bristol a letter confirming that Eden-Sky had acquired the loan from Sky Bank and instructing Bristol not to have any further communications with Sky Bank.

On May 12, 2005, Bristol filed this diversity action against Defendants alleging that Defendants were unjustly enriched at Bristol's expense by usurping a contractual opportunity that allegedly was Bristol's opportunity to pursue. On July 1, 2005, Defendants filed a Motion to

Dismiss, or in the alternative, Motion for Transfer of Venue. This motion is ripe and an opinion is now issued.

**DISCUSSION**

Defendants have moved (1) to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6); (2) for dismissal of Plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2); (3) for dismissal of Plaintiff's complaint pursuant to Rule 12(b)(3) on the basis of improper venue; and (4) alternatively, Defendants request a transfer of venue to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1404 and 1406. For the following reasons, Defendants' Motion to Transfer venue is granted, and this action is transferred to the Western District of Pennsylvania.

Although it is tempting to address Defendants' substantive Rule 12(b)(6) claim first, before proceeding to issues of personal jurisdiction, the Supreme Court has clearly foreclosed such a possibility. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-95 (1998) (rejecting the approach of assuming jurisdiction for the purpose of deciding the merits because "[t]he requirement that jurisdiction be established as a threshold matter springs from the nature and limits of judicial of the United States and is inflexible and without exception."). Therefore, normally this Court would decide whether personal jurisdiction exists over Defendants before proceeding to the merits. However, because this Court may transfer venue under either § 1404(a) or § 1406(a) without regard to whether is has personal jurisdiction over Defendants, this Court need not decide the issue of personal jurisdiction before deciding to transfer venue. See In re Carefirst of Maryland, Inc., 305 F.3d 253, 255-56 (4th Cir. 2002) ("Although its language suggests otherwise, section 1406(a) has been interpreted to authorize transfers in cases where

4

venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district."); see also Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (concluding that a district court lacking personal jurisdiction over a defendant may transfer the case under section 1406(a)). Accordingly, this Court will first address whether this action should be transferred under § 1406(a).

  **A.**  **Transfer of Venue Under § 1404(a)**

  1.  Venue in Maryland Is Proper

In addition to seeking transfer of venue under § 1404(a), Defendants have sought dismissal on the basis of improper venue under Rule 12(b)(3). Nevertheless, under § 1404(a), transfer of venue is warranted, rather than dismissal for improper venue, only if venue is proper in both fora under the federal venue statute. See BHP Intern Inv., Inc. v. Online Exchange, Inc., 105 F.Supp.2d 493, 497 (E.D.VA 2000) (stating that "[d]istrict courts within the Fourth Circuit have almost uniformly held that a motion to dismiss for improper venue is not the correct procedural vehicle . . . when transfer is proper."). Because jurisdiction is based solely on diversity of citizenship in this case, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a).

It is undisputed that venue is proper in the Western District of Pennsylvania. Thus, the only issue is whether venue is proper in Maryland because a "substantial part of the events or omissions giving rise to the claim" occurred in Maryland. Bristol has alleged various state law claims of fraud, tortuous interference with contract, tortuous interference with business relations, and contructive trust. The basis of each claim, however, is that Hindy concocted a scheme to defraud Bristol into believing that he was still

acting on behalf of Sky Bank and that Sky Bank was unwilling to accept a discounted payoff. But for this scheme, Bristol alleges that it would have entered into a valuable agreement to acquire the loans from Sky Bank for $3.6 million dollars, a substantial discount from the face amount of the loans. Specifically, Bristol alleges that during the period after Hindy began acting for his own benefit and not on behalf of Sky Bank, Hindy engaged in regular communications with Bristol while Bristol was in Maryland. In each of these communications, Bristol alleges that Hindy expressly and falsely indicated that he was representing the bank's interest in connection with its dealings with Bristol. Accordingly, this Court finds that venue is proper in Maryland because a substantial part of the events giving rise to the various state tort claims occurred in Maryland.

    2.    <u>A Transfer Would Serve the Purpose of Section 1404(a)</u>

Under § 1404(a), the district court may transfer venue based on the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964).
In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper. <u>Lynch v. Vanderhoef Builders</u>, 237 F.Supp.2d 615, 617 (D. Md. 2002). Moreover, the decision whether to transfer is committed to the sound discretion of the district court. <u>Id.</u>

In deciding whether a motion to transfer should be granted, courts are to consider the following factors: (1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. <u>Id.</u>

    *i.*    *Plaintiff's Choice of Venue*

6

Turning first to Plaintiff's choice of venue, the Court is well aware that Bristol has filed this action in the District Court of Maryland. However, the Supreme Court has clearly emphasized that "the presence of a forum selection clause," such as the parties entered into in this case "will be a significant factor that figures centrally into a district court's calculus." Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Indeed, the Supreme Court has held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Enforcement is unreasonable only when: (1) agreement to the forum-selection clause was induced by fraud or overreaching; (2) enforcement would contravene a strong public policy of the forum in which suit is brought; or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of his day in court. Id.

"The general rule is that when an action arises from a contract or contractual relationship between two parties the choice of forum clause in that contract governs the parties' tort as well as the contract claims." Berry v. Soul Circus, Inc., 189 F.Supp.2d 290, 294 (D. Md. 2002). Here, the Loan Agreement contains an exclusive venue provision that provides:

> 7.11 Consent to Jurisdiction; Service of Process; Jury Trial Waiver.
> (A) Exclusive Jurisdiction. Except as provided in subsection (B), Borrower agrees that all disputes arising out of, connected with, related to, incidental to, or in connection with this agreement, whether arising in contract, tort, or otherwise shall be resolved exclusively by state or federal courts located in Pittsburgh, Pennsylvania . . . .

Based on the unambiguous language of the Loan Agreement, the state and federal courts located in Pittsburgh, Pennsylvania have exclusive jurisdiction over *any* dispute related to the Loan Agreement, including tort claims. Bristol's fraud claim (count I) alleges that but for Hindy's misrepresentations, Bristol

7

would have entered into an agreement to acquire the loan from Sky Bank for $3.6 million; Bristol's tortuous interference with contract claim (count II) alleges that Hindy intentionally interfered with Bristol's Loan Agreement with Sky Bank and induced Sky Bank to breach its agreement with Bristol; Bristol's tortuous interference with business relations claim (count III) alleges that Hindy intentionally used deceptive means to interfere with Bristol's business relationship with Sky Bank and caused Sky Bank not to enter into an agreement with Bristol; and Bristol alleges that Defendants' acquisition of the loans should be deemed a constructive trust (count IV), and pursuant to the terms of the constructive trust, Defendants should be precluded from exercising any rights as lender under the loans.  This Court therefore finds that each of Bristol's tort claims relate to the Loan Agreement.

Additionally, Bristol has not alleged that the applicable forum selection clause was imposed by fraud, or that litigating this case in the Western District of Pennsylvania would gravely inconvenient or would violate fundamental fairness.  Further, Bristol has not alleged that litigating this action in the Western District of Pennsylvania would deprive it of a remedy, or that enforcement would contravene public policy.  Moreover, Plaintiff has consented to a transfer of venue.  In their response to Defendants' Motion for Summary Judgment, Bristol states that although Plaintiff's choice of venue is appropriate, it "consents to the immediate transfer" of venue to the Western District of Pennsylvania, where a parallel action relating to the same subject matter is already pending.

Based on the aforementioned, this Court finds that Bristol has failed to establish any grounds for disregarding the forum-selection clause in the Loan Agreement.  Accordingly, this Court finds that enforcement of the clause is reasonable and therefore the choice of forum factor weighs in favor of transferring this action.

### ii. Witness Convenience & Access

Additionally, the potential witnesses to the alleged misrepresentations are all located within the Western District of Pennsylvania. Based on Bristol's allegations, Defendants made misrepresentations to Sky Bank in Pittsburgh, Pennsylvania, to usurp a business opportunity that Bristol claims belongs to it. Although Sky Bank is not a party to this action, its employees are potential witnesses and many of its documents are potential exhibits. Additionally, the documentation regarding the assignment of loans by Defendants from Sky Bank are located in the Western District of Pennsylvania. Nor can such documents or witnesses be obtained by this Court as Sky Bank is outside the reach of this Court's subpoena power. Furthermore, although Bristol is a Maryland LLC and may have potential business records related to the loans located in the state of Maryland, the facility in which the loans were made is not located in Maryland and many of the records Bristol may wish to use would not be located in Maryland. Thus, the Court finds this factors weighs in favor of transfer.

### iii. Convenience of Parties

The Court finds this factor is essentially neutral. Bristol and its employees are located in Montgomery County, Maryland. Defendants Eden Sky and Hindy are located within the Western District of Pennsylvania. Due to the relative distance between the transferee forum (Pittsburgh, Pennsylvania) and the transferor forum (Greenbelt, Maryland), either party would be greatly inconvenienced if the litigation were to continue in either jurisdiction. Accordingly, this factor does not weigh in favor of transfer.

### iv. Interest of Justice

The interest of justice factor is intentionally broad and designed "to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." Bd. of Trustees, Sheet

9

Metal Workers Nat'l Fund v. Baylor Heating and Air Conditioning Inc., 702 F.Supp. 1253, 1260 (E.D.VA. 1988). Such factors include the pendency of a related action. Id. Here, six weeks after the present action was filed, Defendant Eden-Sky commenced an action against Plaintiff's agent and property manager, Terrace Services, in the Court of Common Pleas of Allegheny County, Pennsylvania, which was later removed to federal court. In the Pennsylvania action, Defendant Eden-Sky seeks a determination of its alleged right to enforce the loan documents as a successor to Sky Bank, i.e., Defendant Eden-Sky is seeking in the Pennsylvania action to enforce the same right that Bristol seeks to preclude Defendant from enforcing in the present action. Additionally, Terrace Services has advised Bristol that it intends to file an interpleader counterclaim to join Bristol in the Pennsylvania action. Under these circumstances, Bristol contends, and this Court agrees, that the preservation of judicial resources requires a resolution of the merits of the Pennsylvania action as expeditiously as possible. Accordingly, this factor weighs in favor of transfer.

### V. Summary of Section 1404(a)

In short, for the above stated reasons, this Court finds that the balance of factors weighs in favor of an immediate transfer of this action to the federal court in the Western District of Pennsylvania. Accordingly, Defendants' motion to transfer venue is granted, and this action is hereby transferred to the Western District of Pennsylvania. In light of the transfer, this Court declines to address the merits of Defendants' Motion to Dismiss the action for lack of personal jurisdiction, failure to state a claim, and improper venue. That motion is denied without prejudice.

### B. Transfer of Venue under § 1406

Section 1406(a) provides for transfer of venue when venue is improper in the transferring court and a transfer is in the interests of justice. This Court concludes that a transfer to the Western District of Pennsylvania would serve the interests of justice under § 1406(a). Thus, even if venue were not proper here in Maryland, this Court would transfer this action to the Western District of Pennsylvania.

A transfer is usually more in the interest of justice than the mechanism of dismissal. See Brown v. Stallworth, 235 F.Supp.2d 453, 456 (D. Md. 2002) (If a court is given a choice between dismissal and transfer, the court is to "transfer, rather than dismiss, only if it is in the interest of justice to do so.") (citations omitted). Considerations similar to those in the foregoing § 1404(a) "interest of justice" analysis would apply here as well. As discussed above, transfer of this action to the Western District of Pennsylvania would avoid substantial expense and, because there is a parallel action with similar issues pending, a transfer would also save judicial resources. Therefore, consistent with its analysis under § 1404(a), this Court concludes that transfer of venue, even if venue were not proper in Maryland, would be in the interest of justice under § 1406(a).

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is **DENIED** without prejudice, and its alternative Motion to Transfer Venue is **GRANTED**. This action is therefore transferred to the United States District Court for the Western District of Pennsylvania. A separate Order shall follow.

| | |
|---|---|
| August 23, 2005 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |